IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| Edward F. HARVEY, Jr., | : |
| | : |
| | : Civil No. 16-2524 |
| Plaintiff, | : |
| | : **Opinion** |
| v. | : |
| | : |
| ACTING COMMISSIONER OF | : |
| SOCIAL SECURITY, | : |
| | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal of Edward F. Harvey, Jr. ("Plaintiff") for review of the final determination of the Commissioner of Social Security ("Commissioner"). The Commissioner denied his application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is **VACATED** and the Court will remand this matter to the Administrative Law Judge ("ALJ") for further proceedings consistent with this Opinion.

**I.      BACKGROUND**

Plaintiff filed a claim for SSDI benefits on December 8, 2011 for the alleged physical and mental ailments detailed below. R. at 18. Plaintiff's alleged disability began July 31, 2011. *Id.* Plaintiff's claims were denied initially on March 7, 2012 and denied after reconsideration on February 23, 2013, after which he requested a hearing before an ALJ that was held on June 5, 2014. *Id.* The ALJ denied Plaintiff's claims on October 31, 2014. *Id.* at 15. Subsequently on May

4, 2016, Plaintiff filed the present Complaint appealing the decision denying his claims (Doc. No. 1).

### A. Plaintiff's Alleged Impairments

For background purposes, a brief medical history of Plaintiff's ailments follows. Plaintiff allegedly suffers from disability dating back to a hospitalization that started on July 31, 2011 and led to ongoing respiratory problems, chest pain, balance dysfunction, and severe neuropathy in his left leg. R. at 37–38. On July 31, 2011, Plaintiff was admitted to Virtua Memorial Hospital of Burlington County with shortness of breath, weakness, fever, and cough. *Id.* at 252. Shortly after his arrival, Plaintiff was discovered to have a pleural effusion and empyema, which developed into acute respiratory failure. *Id.* at 250. Plaintiff was intubated in the intensive care unit while his lung was drained via a chest tube. *Id.* After Plaintiff was extubated and his lung was drained, he remained in the hospital while he finished a course of IV antibiotics, and was discharged on September 7, 2011. *Id.* Plaintiff alleges that being bedridden and on IVs for several weeks caused swelling and nerve damage in his left leg and foot and left him with ongoing neuropathy in that leg. *Id.* at 45.

Plaintiff was first examined by Dr. Parag Patel of Tabernacle Family Physicians on November 11, 2011. *Id.* at 387. From 2012 through 2014, Plaintiff continued to be regularly examined by Dr. Patel on a roughly month by month basis. *See id.* at 417–76. Dr. Patel's notes from Plaintiff's complaints and her own examinations document that Plaintiff suffered from decreased air entry, anxiety, decreased range of motion, arthralgia, neuralgia, hypertension, and other ailments. *See id.* at 420–21, 424–25, 437–54, 461–76. Dr. Patel produced three relevant opinions regarding Plaintiff's limitations. On January 9, 2012, Dr. Patel filled out a General Medical Report submitted to the Social Security Administration in which she noted that Plaintiff

suffered from weakness, dyspnea, anxiety, and edema, among other ailments. *Id.* at 387–88. In assessing whether Plaintiff could work, Dr. Patel checked boxes indicating that he could only occasionally lift up to ten pounds, that he could stand/walk for less than two hours per day, that he could sit for up to eight hours per day, and that his ability to push and pull were limited. *Id.* at 388. On November 2, 2012, Dr. Patel wrote a letter asking that Plaintiff be excused from jury duty because of his neuropathy, edema, and dyspnea, which left him unable to sit, stand, or walk for any long period of time. *Id.* at 423. Finally, on March 26, 2014, Dr. Patel filled out a Medical Source Statement identifying plaintiff as suffering from numerous ailments including musculoskeletal pain, anxiety/depression, fatigue, headaches, difficulty walking, shortness of breath, and insomnia. *Id.* at 429. Dr. Patel indicated that Plaintiff would need to recline for at least ninety minutes daily, that his breaks would be unpredictable, and that he would likely be off task 25% or more of a typical work day. *Id.* at 431. Dr. Patel also said Plaintiff could sit less than four hours on a typical work day and stand/walk for less than an hour, that his legs should be elevated half the time, that he could only walk half a block without rest or severe pain, and that he could only rarely lift up to 10 pounds. *Id.* at 436.

Plaintiff self-reported his capabilities in two Function Reports and in his hearing testimony. In the first Function Report, dated January 9, 2012, Plaintiff said that he lived with his parents and could grocery shop if given enough time, but that he relied on a walker to walk more than thirty feet. *Id.* at 192. Plaintiff stated that he could bathe, dress, and groom himself with only minor difficulty, but that he could not squat or bend down and that his performance of household chores was limited to laundry, heating food, and light cleaning, for only ten to twenty minutes at a time. *Id.* at 193–94. Plaintiff also indicated that his leg pain and chest discomfort made it difficult for him to fall asleep and frequently woke him up during the night. *Id.* at 193.

3

Plaintiff said that he left the house several times a week and could drive a car, that he was able to read and watch television, and that he had no problems paying attention or finishing what he started. *Id.* at 193, 195–97. Plaintiff's second Function Report, dated June 11, 2012, was mostly the same. *Id.* at 214-221.

Plaintiff also testified regarding his physical limitations at his hearing on June 5, 2014. *Id.* at 32. He said that he was able to grocery shop, though it was "most stressful thing [he does] physically" and that he needed to lean on his cart for support and stop every aisle to rest and lift his left foot. *Id.* at 40, 48. After shopping, Plaintiff said that he could carry grocery bags weighing ten to fifteen pounds for the fifty feet from the car to the house, though he needed to rest between trips. *Id.* at 57. He testified that he could walk two hundred feet at most before needing to rest, and that he suffered from a dull, constant pain in his leg and foot that was exacerbated by physical activity. *Id.* at 46-47. He said that it was difficult to sit for long periods without raising his leg, standing up and moving around, or laying down. *Id.* at 48. His pain made it difficult to fall asleep and stay asleep, but he frequently stayed in bed until the afternoon to ensure he got a total of five to six hours of sleep a night. *Id.* at 49–50. Plaintiff also testified that his sleeplessness and anxiety made it difficult for him to focus on a task for more than an hour at a time. *Id.* at 54.

B.     **The ALJ's Decision**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine if Plaintiff was disabled. *See* 20 C.F.R. § 404.1520. For the first four steps of the

4

evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period. *See* 20 C.F.R. § 404.1572 (defining "substantial gainful activity"). Second, the claimant must demonstrate that he has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least 12 months. *See* 20 C.F.R. § 404.1520(a)(4)(ii) (explaining second step); 20 C.F.R. § 404.1509 (setting forth the duration requirement). Third, either the claimant shows that his condition was one of the Commissioner's listed impairments, and therefore he is disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii) (explaining the third step); *see also* 20 C.F.R. pt. 404, subpt. P., app. 1. Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that he cannot perform his past work, and the ALJ must assess the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv) (explaining the fourth step); 20 C.F.R. § 404. 1520(e) (same). If the claimant meets his burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing based on his RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v) (explaining the fifth step). If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity after July 31, 2011. R. at 20. At step two, the ALJ found that Plaintiff had the severe impairments of lumbosacral neuritis and morbid obesity. *Id.* The ALJ also considered Plaintiff's history of pleural effusion, respiratory failure, empyema, hypertension, ventricular tachycardia,

and diabetes mellitus, and found all these impairments non-severe. *Id.* At step three, the ALJ noted that Plaintiff did not suffer from one of the listed impairments that would render him automatically disabled. *Id.* at 21. At step four, the ALJ found that Plaintiff's impairments were not equivalent to any listed impairment, and that although he could no longer perform any past relevant work, he had the RFC to perform light work with some limitations.[1] *Id.* at 21, 26. At step five, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff was qualified to perform based on his RFC, age, education, and work experience. *Id.* at 26–27. Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant time period. *Id.* at 27.

## II.  STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). The often-used quotation for the standard is that substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial

---

[1] The ALJ found that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) except can stand/walk up to 6 hours per day, but for no more than 1 hour at a time, and then would need to sit/shift positions for 4-5 minutes while remaining on task. ee [sic] can perform simple and detailed tasks. He must avoid concentrated exposure to dust, fumes, temperature extremes and pulmonary irritants. The claimant can occasionally climb ramps and stairs, but is restricted from working around heights and dangerous/moving machines (defined as machines that cut/shear). Finally, he can only occasionally stoop and balance." R. at 21.

evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The ALJ determined that Plaintiff was not disabled within the meaning of §§ 216(i) and 223(d) of the Social Security Act. Plaintiff presents three arguments on appeal of the Commissioner's final decision: first, that the ALJ failed to consider Plaintiff's pulmonary conditions, anxiety, and depression at Step Two and in formulating the RFC, and the ALJ failed to evaluate the anxiety and depression under 20 C.F.R. § 404.1520a; second, that the ALJ improperly assigned little weight to the opinion of Plaintiff's treating physician, Dr. Patel; and third, that the ALJ erred in evaluating Plaintiff's credibility. The Court addresses each argument in turn.

7

### A. Consideration of Plaintiff's Pulmonary Conditions, Anxiety, and Depression

Plaintiff argues that the ALJ's finding in Step Two is not supported by substantial evidence because she failed to discuss Plaintiff's pulmonary ailments, anxiety, and depression as medically determinable impairments. Defendant counters that any error was harmless, because the ALJ nonetheless allowed Plaintiff's claim to proceed past Step Two. Where the ALJ finds in a claimant's favor at Step Two despite concluding erroneously that some severe impairments were non-severe, the error is harmless and remand is not appropriate. *See, e.g.*, *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007). Thus, the Court finds that substantial evidence supports the determination at Step Two.

The ALJ, however, must nonetheless "consider all . . . medically determinable impairments . . . including [those] that are not 'severe'" when assessing the RFC. 20 C.F.R. § 404.1545(a)(2). In addition, mental impairments are subject to a special technique for determining the claimant's functional mental limitations under 20 C.F.R. § 404.1520a. In this case, the ALJ does not discuss Plaintiff's dyspnea in Step Two, but does refer to his ongoing pulmonary ailments when evaluating the medical evidence and Plaintiff's testimony at Step Four. R. at 21, 23–25. Furthermore, the RFC included a limitation on pulmonary irritants. *Id.* at 21. The Court therefore finds the ALJ did properly consider Plaintiff's pulmonary condition. The ALJ's evaluation of Plaintiff's anxiety and depression, however, was lacking, and the Court finds the RFC assessment is not supported by substantial evidence. Despite numerous references in the medical records and the administrative hearing to Plaintiff's suffering from anxiety and depression, the decision mentions the impairments only once in passing, in reciting the list of ailments noted in Dr. Patel's March 2014 Medical Source Statement. R. at 25. There is no indication that the ALJ considered Plaintiff's mental impairments at Step Four or used the

special technique for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a.[2] The ALJ does write that "mental limitations have been included to address the claimant's severe and nonsevere impairments," but such a statement is conclusory and fails to furnish an explanation for whether and how she assessed such evidence. *See* R. at 20. Such paucity of reasoning does not meet even the generous standard of substantial evidence, and the Court accordingly finds that the ALJ did not properly consider Plaintiff's anxiety and depression in formulating the RFC.

### B. Dr. Patel's Opinion

The ALJ is responsible for assigning weight to the medical opinions of record. *See* 20 C.F.R. § 404.1527. The ALJ must, however, "explain the basis for his or her conclusions." *Fargnoli*, 247 F.3d at 42. If evidence is rejected, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 711 (3d Cir. 1981). The explanation need not be comprehensive; "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). In general, opinions from treating sources receive more weight because they are most likely to be able to provide a "detailed, longitudinal picture of [a claimant's] medical impairment(s)" and "unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). If an opinion from a treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record, the opinion is accorded controlling weight. *Id.* If not, the ALJ determines how much weight to assign the opinion based on the length of the treatment relationship, frequency of examination, nature and extent of the treatment

---

[2] Plaintiff seems to argue that the ALJ should have evaluated all severe and non-severe impairments according to the special technique in 20 C.F.R. § 404.1520a. Pl.'s Br. 15. The Court notes, however, that this section only applies to mental impairments.

relationship, level of evidentiary support, consistency with the record, specialization of the physician, and other factors. *See* 20 C.F.R. § 404.1527(c). The ALJ may assign more or less weight to a treating physician's opinion "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted). However, an ALJ may not assign lesser weight to a treating physician's opinion based on erroneous facts or misinterpretations of the record. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355-56 (3d Cir. 2008). Furthermore, an ALJ may only reject a treating physician's assessment outright in the face of contradictory medical evidence, and may not do so based on "speculative inferences from medical reports" or "credibility judgments, speculation, or lay opinion." *Morales*, 225 F.3d at 317 (citations omitted).

Plaintiff argues that the ALJ improperly assigned little weight to the opinion of treating physician Dr. Patel. The Court agrees. The ALJ's decision references several treatment notes and opinions from Dr. Patel between 2012 and 2014, and accords them little weight because they are inconsistent with his treatment notes. R. at 24. The inconsistency appears to stem from several statements made by Plaintiff that he felt "all right" and "well." *Id.* As the decision also notes, however, Dr. Patel repeatedly found the presence of shortness of breath, generalized pain, dyspnea, neuropathy, back pain, muscle pain/spasms, leg pain, decreased range of motion, and other ailments throughout the 2012 to 2014 period. *Id.* These notes are detailed and consistent with the opinions proffered by Dr. Patel. The ALJ offers no explanation for why she disregards these reports, to favor the vague remarks Plaintiff made in passing. Because the ALJ does not

show that substantial medical evidence contradicts Dr. Patel's opinion, the Court cannot conclude there is substantial evidence to support the little weight assigned to his opinion.[3]

### C. Evaluation of Plaintiff's Testimony

Finally, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's credibility regarding the debilitating effects of his impairments. A person's complaints should be given "great weight and may not be disregarded unless there exists contrary medical evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067–68 (3d Cir. 1993) (citations and internal quotations omitted). SSR 96-7p requires that the ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7p (July 2, 1996).[4] A conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible" does not suffice. *Id*. In determining credibility, the ALJ must examine the entire case record, including objective medical evidence, the individual's statements, information provided by physicians, and other relevant evidence in the record. *Id.*

---

[3] Defendant's brief advances several other arguments to support the ALJ's decision to discount Dr. Patel's opinion, including that Dr. Patel articulated some of his opinions in fill-in-the-blank and checkbox style reports. Def.'s Br. 15. It cites two Third Circuit cases that suggest such forms are of low evidentiary value. *See Mason*, 994 F.2d at 1065; *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). These cases are inapplicable here. In *Mason*, such a form was the only evidence in the record from that physician and, in *Brewster*, was contradicted by much greater evidence from the claimant's treating physician. *See Mason*, 994 F.2d at 1065; *Brewster*, 786 F.2d at 585. In addition, Defendant contends that a treating physician's opinion "must be balanced against his desire to help his patient succeed in his claim for benefits." Def.'s Br. 15. Such a balancing test does not appear in the applicable regulations or Third Circuit precedent, and the Court declines to adopt it here.

[4] After the ALJ's decision in this case, SSR 96-7p was superseded by SSR 16-3p. The new regulation removes the term "credibility" and clarifies that the ALJ is not evaluating the claimant's character, but rather whether the claimant's statements are consistent with objective medical evidence. SSR 16-3p. There is no indication here that the ALJ's decision was based on her evaluation of Plaintiff's character, so this Court's analysis remains the same under either regulation.

Here, the decision summarizes Plaintiff's Function Reports and testimony about his daily activities, and concludes, "[Plaintiff]'s self-reported activities are inconsistent with an individual experiencing totally debilitating symptomatology." *Id.* at 23. The section discussing Plaintiff's statements, however, contains no references to evidence in the case record, whether it accords with Plaintiff's testimony, and its import on the ALJ's ultimate conclusion on credibility, as required by SSR 96-7p. Absent specific reasons that explain the weight accorded Plaintiff's statements, the Court cannot find that the credibility evaluation is supported by substantial evidence.

## IV. CONCLUSION

For the reasons discussed above, the decision of the Commissioner is **VACATED** and the Court will remand this matter to the ALJ for further proceedings consistent with this Opinion.


Dated:   6/16/2017                                             s/ Robert B. Kugler

                                                                                     ROBERT B. KUGLER

                                                                                      United State District Judge